PEOPLE v HEARN

Docket No. 78-5461. Submitted April 14, 1980, at Detroit.—Decided October 22, 1980.

Defendant, Terry S. Hearn, was convicted in Wayne Circuit Court of first-degree criminal sexual conduct, George T. Martin, J. Defendant testified at trial that the complainant had consented to have sexual relations with him. The trial court failed to instruct the jury on the defense of consent and instructed instead solely on the two elements of the offense, sexual penetration and being armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe the article to be a weapon. On appeal, defendant contends that the trial court committed error by refusing to instruct on consent as a defense and abused its discretion by ruling that the prosecutor had exercised due diligence in attempting to produce a res gestae witness at trial. *Held:*

1. Defendant's theory of defense should have been included in the instructions to the jury. A trial court is required to charge the jury concerning the law applicable to the case, and the criminal sexual conduct statute impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither mentally defective, mentally incapacitated nor physically helpless is not criminal sexual conduct. Consent continues to be a defense to a charge of sexual misconduct.

2. The examining physician of a complainant in a prosecution for sexual misconduct is a res gestae witness and once an individual is endorsed on an information, the prosecution is obligated to produce that witness or satisfactorily explain the reasons for the absence. The prosecution's duty to produce a res

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 647, 713.
[2] 65 Am Jur 2d, Rape § 38.
[3] 65 Am Jur 2d, Rape § 2 *et seq.*
[4] 65 Am Jur 2d, Rape §§ 7, 38.
[5] 81 Am Jur 2d, Witnesses § 244.
[6, 7] 29 Am Jur 2d, Evidence § 180.
  81 Am Jur 2d, Witnesses § 2.

gestae witness is excused upon a showing that due diligence was used in attempting to secure the witness. The efforts expended by the prosecution in this case were insufficient to meet the standard of due diligence.

Reversed and remanded.

1. CRIMINAL LAW — JURY INSTRUCTIONS — TRIAL.

A trial court is required, in a criminal prosecution, to charge the jury concerning the law applicable to the case, and the instruction must include all elements of the crime charged and must not exclude from the jury's consideration any material issues, defenses or theories if there is evidence to support them.

2. RAPE — ELEMENTS OF CRIME — DEFENSES — CONSENT — STATUTES.

Consent is a defense to a charge of criminal sexual conduct in the first degree even though the explicit language of a subsection of the criminal sexual conduct statute seems to support the position that the only elements are sexual penetration and that the penetration occur while the actor is armed (MCL 750.520b[1][e]; MSA 28.788[2][1][e]).

3. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — ELEMENTS OF CRIME — STATUTES.

A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if the actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon (MCL 750.520b[1][e]; MSA 28.788[2][1][e]).

4. RAPE — DEFENSES — IMPLIED DEFENSE — CONSENT.

The criminal sexual conduct statute, although silent on the defense of consent, impliedly comprehends that a willing, non-coerced act of sexual intimacy or intercourse between persons of sufficient age who are neither mentally defective, mentally incapacitated nor physically helpless is not criminal sexual conduct.

5. RAPE — WITNESSES — RES GESTAE WITNESSES — EXAMINING PHYSICIAN.

The examining physician of a complainant in a sexual misconduct prosecution is a res gestae witness.

6. CRIMINAL LAW — WITNESSES — ENDORSED WITNESSES — OBLIGATION TO PRODUCE OR EXPLAIN.

The prosecution in a criminal trial is obligated, once an individual is endorsed on an information, to produce that witness or to satisfactorily explain the reasons for the absence.

7. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUTY TO
   PRODUCE — DUE DILIGENCE.

   The prosecution's duty to produce a res gestae witness in a
   criminal trial is excused upon a showing that due diligence was
   used in attempting to secure the witness; the level of diligence
   required of the prosecution is devoted and painstaking applica-
   tion to accomplish the undertaking.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Anne B. Wetherholt,*
Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER
and D. F. WALSH, JJ.

D. F. WALSH, J. Defendant was charged with five
offenses, all arising from a single incident. The
charges included: kidnapping, felonious assault,
two counts of criminal sexual conduct, and posses-
sion of a firearm during the commission of a
felony. The felony-firearm charge was dismissed.
At his first trial, defendant was acquitted of kid-
napping and felonious assault, but the jury was
unable to reach a verdict on the criminal sexual
conduct counts. Defendant was tried a second time
on those counts, with the same result. A third trial
on the criminal sexual conduct charges ended with
a jury conviction. Defendant was subsequently
sentenced to life imprisonment.

The sexual intercourse occurred during the
early morning hours of December 13, 1977. Com-
plainant's version of the facts was that she and
her boyfriend checked into a motel, they heard a
knock at the door, and defendant entered the room
and pointed a gun at the two occupants. As a

result of the boyfriend's observation that gunfire would alert anyone in the area, defendant removed the bullets from the gun. He then produced a knife and threatened complainant and her boyfriend, saying he would "slice them up". They were then forced to accompany the defendant in his car. After a short drive, they were ordered out of the automobile. Defendant then hit complainant's boyfriend over the head with the gun and drove away with the complainant. The boyfriend memorized the license plate number and informed the police, who subsequently located the defendant's car. The complainant, found crying and hysterical in defendant's vehicle, stated that she had been raped. She was treated at a local hospital, where tests for the presence of seminal fluid proved positive.

A different version of events was offered by defendant who testified that he found the complainant hitchhiking in front of the motel, he picked her up and she requested a ride to Wyandotte, the complainant voluntarily had sexual intercourse with him in the car and then requested a ride back to the motel, where she was to meet a friend, the police stopped defendant's car along the way, the gun belonged to the complainant, defendant did not show his pocket knife to anyone, and he neither entered the motel room nor hit the complainant's boyfriend.

Defendant was charged with criminal sexual conduct in the first degree. MCL 750.520b(1)(e); MSA 28.788(2)(1)(e). At trial, defendant testified that the sexual relations were consensual. The trial court, however, failed to instruct on consent. Defendant argues that the trial court erred in failing to instruct on his theory of defense. We agree and reverse.

Although defendant did not request a jury instruction on consent at trial, we are not precluded from considering this claim of error on appeal. The trial court is required to charge the jury concerning the law applicable to the case. *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967), *People v Oberstaedt,* 372 Mich 521, 526; 127 NW2d 354 (1964), *People v Lewis,* 91 Mich App 542; 283 NW2d 790 (1979). As stated by the Supreme Court in *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975):

"The instruction to the jury must include all elements of the crime charged * * * and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them."

The prosecutor argues that consent cannot be a defense to a charge of criminal sexual conduct under MCL 750.520b(1)(e); MSA 28.788(2)(1)(e), since the only elements of that offense are, first, that there be sexual penetration and, second, that the sexual penetration occur while the actor is armed. Although the explicit language of the 1974 statute, 1974 PA 266, effective April 1, 1975, may seem to support the prosecutor's position we find that consent remains a defense to the charged offense of sexual misconduct. The 1974 statute provides:

"Sec. 520b. (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

"(e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to

reasonably believe it to be a weapon." MCL 750.520b(1)(e); MSA 28.788(2)(1)(e).

In *People v Khan,* 80 Mich App 605; 264 NW2d 360 (1978), we considered the continued viability of consent as a defense to a charge of criminal sexual conduct under the provision of the 1974 statute.

"Although the statute is silent on the defense of consent, we believe it impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither 'mentally defective', MCL 750.520a(c); MSA 28.788(1)(c), 'mentally incapacitated', MCL 750.520a(d); MSA 28.788(1)(d), nor 'physically helpless', MCL 750.520a(e); MSA 28.788(1)(e), is not criminal sexual conduct. Otherwise, there would be no reason for the foregoing definitional sections to employ terms referring to an ability to appraise or control one's conduct or to communicate unwillingness to an act. Nor would there be any apparent reason for permitting the discretionary use of evidence of the victim's past sexual conduct with the actor, MCL 750.520j(1)(a); MSA 28.788(10)(1)(a), other than to show previous instances of consensual sex." *People v Khan, supra,* 619, fn 5.

Justice LEVIN in his dissent in *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), commented on the effect of the victim's consent in prosecutions under the 1974 act:

"The new criminal sexual conduct act does not speak in terms of the victim's consent or will but of whether 'force or coercion is used to accomplish the sexual penetration' or 'contact'. MCL 750.520a, *et seq.;* MSA 28.788(1) *et seq.* The act provides that the 'victim need not resist the actor'. MCL 750.520i; MSA 28.788(9).

"The primary issue is whether force or coercion is used; non-consent may, it would appear, be an inference from evidence of force or coercion. *Consent would, of*

*course, be a defense." People v Oliphant, supra,* (LEVIN, J., dissenting) 510, fn 8. (Emphasis supplied.)

Although the statute does not specifically address the defense of consent, its various provisions when considered together clearly imply the continuing validity of that defense. Certainly the Legislature, in eliminating the necessity of proof of nonconsent by the prosecution, did not intend to preclude an accused from alleging consent as a defense to the charge.

The defense of consent seems to have been recognized by this Court on other occasions. See *People v Dawsey,* 76 Mich App 741, 751-752; 257 NW2d 236 (1977), *People v Perez,* 86 Mich App 604, 607; 273 NW2d 496 (1978), and *People v Payne,* 90 Mich App 713; 282 NW2d 456 (1979).

In the instant case, Hearn's theory of defense was that the sexual intercourse was consensual. The court instructed the jury solely as to the two elements of the offense, that is, sexual penetration and the defendant being armed with a weapon. This was not sufficient. Defendant's theory of defense should have been presented to the jury in the instructions.

Defendant also argues that the trial court abused its discretion in ruling that the prosecutor had exercised due diligence in attempting to produce a res gestae witness at trial. We agree. The witness at issue was Dr. Orihuelah, the physician who examined and treated the complainant at the hospital. Dr. Orihuelah was endorsed on the information as a witness.

The examining physician of the complainant in a prosecution for sexual misconduct is a res gestae witness. *People v Kirtdoll,* 391 Mich 370, 395; 217 NW2d 37 (1974), *People v Crable,* 33 Mich App

254; 189 NW2d 740 (1971), *People v Kelly,* 30 Mich App 154; 186 NW2d 72 (1971). Further, once an individual is endorsed on an information, the prosecution is obligated to produce that endorsed witness or satisfactorily explain the reasons for the absence. *People v Baines,* 68 Mich App 385, 386 fn 1; 242 NW2d 784 (1976), *People v Kern,* 6 Mich App 406; 149 NW2d 216 (1967).

The prosecution's duty to produce a res gestae witness is excused upon a showing that due diligence was used in attempting to secure the witness. *People v McPherson,* 84 Mich App 81; 269 NW2d 313 (1978), *People v Buero,* 59 Mich App 670; 229 NW2d 880 (1975). The level of diligence required of the prosecution is "devoted and painstaking application to accomplish [the] undertaking". *People v McPherson, supra,* 85.

In the instant case, the testimony given concerning the prosecution's efforts in securing the witness showed that the investigating officer contacted a hospital where the physician had been working and was informed that the witness had taken employment at another hospital and that at the second hospital, the officer found out that the witness "was leaving" for Texas in order to practice medicine there. After these initial efforts in June, 1978, no further inquiry was made. The trial was conducted three months later.

Based on the above, we conclude that the efforts expended by the prosecution were insufficient to meet the *McPherson* standard of due diligence. The fact that the witness was leaving for Texas did not excuse the prosecution from any further effort to locate him. Three months passed between the ascertaining of this knowledge and the commencement of the trial. Further reasonable efforts, including the contacting of the Texas Medical Association, could have been pursued.

Due to the disposition of the case on the previous issues, several additional matters raised by defendant need not be addressed.

The defendant's conviction is reversed and the case is remanded for a new trial.