PEOPLE v JANSSON

Docket No. 48104. Submitted January 19, 1982, at Detroit.—Decided June 8, 1982.

Gustave E. Jansson was convicted of criminal sexual conduct in

References for Points in Headnotes

[1] 30 Am Jur 2d, Evidence §§ 1170-1172.

[2, 7] 65 Am Jur 2d, Rape §§ 3, 4, 7.

What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163.

[3] 65 Am Jur 2d, Rape § 38.

[4] 21 Am Jur 2d, Criminal Law §§ 411-413.

[5, 9] 5 Am Jur 2d, Appeal and Error § 772.

[6] 75 Am Jur 2d, Trial §§ 576 *et seq.,* 643, 654.

[7] 5 Am Jur 2d, Appeal and Error § 623.

[8] 29 Am Jur 2d, Evidence §§ 249, 251, 257.

75 Am Jur 2d, Trial §§ 202, 204.

[9] 75 Am Jur 2d, Trial §§ 237, 239, 245.

76 Am Jur 2d, Trial § 1080.

Violation of federal constitutional rule (Griffin v California) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.

[10] 5 Am Jur 2d, Appeal and Error §§ 624-627.

75 Am Jur 2d, Trial § 317.

[11] 75 Am Jur 2d, Trial § 211.

[12] 75 Am Jur 2d, Trial § 193.

[13] 75 Am Jur 2d, Trial § 261.

Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern cases. 88 ALR3d 449.

[14, 15] 29 Am Jur 2d, Evidence § 831.

75 Am Jur 2d, Trial §§ 195, 253, 258.

Propriety and prejudicial effect of informing jury that accused has taken polygraph test, when results of test would be inadmissible in evidence. 88 ALR3d 227.

Physiological or psychological truth and deception tests. 23 ALR2d 1306.

[16] 21 Am Jur 2d, Criminal Law §§ 596, 597.

Defendant's right to disclosure of presentence report. 40 ALR3d 681.

the third degree following a jury trial in Kent Circuit Court, George R. Cook, J. Defendant appeals. *Held:*

1. Since there was evidence adduced that defendant sexually penetrated the complainant and such penetration was accomplished by force or coercion, there was sufficient evidence to support the conviction for criminal sexual conduct in the third degree and there was sufficient evidence to bind defendant over for trial on that charge and support the denial of the motion to quash. While consent is a defense, the prosecution does not have to separately prove nonconsent, nonconsent being implicit in the finding of force or coercion.

2. In the absence of a request to charge the jury, the trial court is under no obligation to charge the jury on the issue of consent where the charge is based on force or coercion.

3. The prosecutor's remarks in his opening statement were not so damaging to the defendant that the trial court erred in refusing to grant a mistrial. The trial court's cautionary instruction cured any prejudice that defendant may have suffered from the prosecutor's opening statement.

4. The prosecutor's statements in the closing arguments were proper and fair comment on the evidence and within the scope and latitude afforded the prosecutor to respond to defense counsel's arguments.

5. The brief reference to a polygraph test, inadvertently made, isolated, not pursued and devoid of any indication of the results of such test, does not warrant reversal.

6. Since defendant was represented by counsel to whom the contents of the presentence report were divulged, no error arose from the trial court's refusal to permit defendant the opportunity to examine the presentence report personally.

Affirmed.

1. CRIMINAL LAW — DUE PROCESS — SUFFICIENCY OF EVIDENCE.

A court, in determining whether there was sufficient evidence to support a conviction, must consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

2. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT IN THIRD DEGREE — EVIDENCE.

A conviction for criminal sexual conduct in the third degree requires proof of sexual penetration accompanied by force or coercion; force or coercion within the meaning of the statute includes not only physical force or violence but also threats of force or violence where the victim believes the actor has the

present ability to execute those threats (MCL 750.520b[1][f][i], [ii], 750.520d[1][b]; MSA 28.788[2][1][f][i], [ii], 28.788[4][1][b]).

3. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT IN THIRD DEGREE.

Consent is a defense to the offense of third-degree criminal sexual conduct by force or coercion; however, the prosecution need not prove nonconsent as a separate element since proof of force or coercion necessarily establishes that the act was nonconsensual.

4. CRIMINAL LAW — EXAMINING MAGISTRATES — PROBABLE CAUSE — EVIDENCE.

It is the duty of an examining magistrate to bind a defendant over for trial if it appears that a crime has been committed and there is probable cause to believe that the defendant committed it; positive proof of guilt is not required but there must be evidence on each element of the crime charged or evidence from which those elements may be inferred.

5. CRIMINAL LAW — PRELIMINARY EXAMINATION — APPEAL.

A magistrate's determination at a preliminary examination should not be disturbed on appeal absent a clear abuse of discretion.

6. CRIMINAL LAW — JURY INSTRUCTIONS — THEORIES OF THE PARTIES.

A trial judge is required to give instructions on the theories of the parties only where such instructions are requested and supported by the evidence.

7. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT IN THIRD DEGREE — JURY INSTRUCTIONS — CONSENT — APPEAL.

Instructing the jury that, in order to convict for third-degree criminal sexual conduct, they must find there was penetration which was accomplished by force or coercion implicitly incorporates the idea of lack of consent; failure to request at trial a specific instruction on the question of lack of consent by the victim precludes appellate review.

8. TRIAL — OPENING STATEMENTS — EVIDENCE.

The appropriate place for a party to make a full and fair statement of the facts which he intends to prove during a trial is in his opening statement, and the admissibility of any evidence which will be offered to prove such facts is to be determined at the time the evidence is introduced, not during the opening statement.

9. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO REMAIN
   SILENT — MISTRIAL — APPEAL.

   Comment by a prosecutor upon a defendant's right to remain
   silent, his failure to take the stand or his failure to call
   witnesses on his behalf is, as a general rule, error; the question
   of whether such prosecutorial comment is error so grievous as
   to necessitate a mistrial is addressed to the discretion of the
   trial court whose decision will not be reversed on appeal absent
   a clear abuse of discretion.

10. APPEAL — CRIMINAL LAW — PRESERVING QUESTION.

    Failure to raise an objection to remarks made by a prosecutor
    during closing argument precludes appellate review unless the
    prejudicial effect of the remarks was so great as to be incapable
    of cure by a timely cautionary instruction.

11. CRIMINAL LAW — CLOSING ARGUMENT — PROSECUTOR'S COM-
    MENTS.

    A prosecutor, as an advocate, is free, in closing argument, to
    relate the facts to his theory of the case and to argue the
    evidence and all reasonable inferences therefrom.

12. CRIMINAL LAW — PROSECUTOR'S COMMENTS.

    A prosecutor's remarks, even if improper, do not result in revers-
    ible error where made in response to issues raised by defense
    counsel.

13. CRIMINAL LAW — PROSECUTOR'S COMMENTS — SHOWING OF GUILT.

    The prosecutor may not attempt to place the prestige of his office
    behind a contention that the defendant is guilty, but he may
    argue that the evidence shows that the defendant is guilty.

14. CRIMINAL LAW — EVIDENCE — POLYGRAPH EXAMINATION.

    The mere mention of a polygraph by a witness does not require
    reversal where the record does not establish that the witness
    took a polygraph test, where no test results were introduced
    into evidence and where there was no intent to bolster the
    witness's credibility by use of the test results.

15. CRIMINAL LAW — APPEAL — EVIDENCE — POLYGRAPH EXAMINA-
    TION.

    Evidence of a polygraph examination is inadmissible in a crimi-
    nal trial; in reviewing the prejudicial effect of the admission of
    evidence of a polygraph examination of one of the witnesses the
    following considerations should be weighed: (1) whether the
    defendant objected and/or sought a cautionary instruction; (2)
    whether the reference was inadvertent; (3) whether there were

repeated references; (4) whether the reference was an attempt to bolster the witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.

16. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORT — COURT RULES.

A trial court need not afford a defendant the opportunity to personally examine the presentence report where the defendant is represented by counsel and the contents of the presentence report are divulged to defense counsel and both defense counsel and defendant are afforded a full opportunity to contest the factual assertions contained in the report (GCR 1963, 785.12).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Defendant Gustave Eric Jansson was convicted by a jury of criminal sexual conduct in the third degree, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b), and was sentenced to a term of 10 to 15 years in prison. He appeals as of right.

Carolyn Lamoreaux, the complainant, testified that on January 7, 1979, she was introduced to the defendant by a mutual friend at a Dunkin' Donuts restaurant. The complainant was asked by the defendant if she was looking for a job and she answered she was. The defendant suggested that she fill out an application that night for a full-time secretarial position at his place of employment.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The two left the restaurant and drove to the Stedman Agency. The defendant explained the responsibilities of the job while showing the complainant around the building. The two then entered Frank Stedman's office and the defendant and the complainant sat down. During the ensuing conversation, the defendant told the complainant that he was interested in "someone to fuck". The complainant indicated to the defendant that she would not "do things like that". Defendant walked over and turned off the light. The complainant stood up and was grabbed by the defendant. The defendant pulled the complainant to the floor and removed her clothing. He then removed his own clothing and had sexual intercourse with the complainant.

The complainant testified that she did not engage in the act willingly but was forced by the defendant. She was frightened and panicked and did not know what action to take.

Following intercourse, defendant called John Stedman. Mr. Stedman came to the office building. Complainant testified that when Mr. Stedman arrived at the office, the defendant lifted her blouse and underclothing to expose her breasts.

Complainant then waited outside the building for the defendant to drive her home. The defendant drove the complainant to Dunkin' Donuts. He asked the complainant for her phone number and she complied.

Complainant called David Heyboer, a police officer and former boyfriend. They met and she told him what had transpired. He encouraged her to report the incident to the police.

An intern at the Grand Rapids Police Department testified that the complainant came into the police department during the early morning hours

of January 8, 1979, to make a complaint that she had been raped.

A representative of the crime laboratory testified that cervical smears obtained from the complainant indicated the presence of seminal fluid.

John Stedman testified that he was at the Stedman Agency office on the night of January 7, 1979. He stated that the defendant told the complainant "show Mr. Stedman what you have to offer". The complainant then lifted up her blouse and exposed her breasts.

The prosecution also offered the testimony of a Grand Rapids police officer concerning interviews she conducted with the defendant on January 11 and January 29, 1979. The defendant's statements, to the effect that intercourse occurred but was consensual, contained inconsistencies regarding details of defendant's involvement with the complainant on January 7, 1979.

Following the presentation of the prosecution's case, the defendant moved for a directed verdict. The motion was denied.

The defendant did not testify. The only witness called on behalf of the defense was Mr. Vreeland who had accompanied Mr. Stedman to the office on the night in question. Mr. Vreeland indicated that the complainant came out of the building about 15 minutes after Mr. Stedman entered and said nothing about the alleged crime during a brief exchange with the witness.

The jury returned a verdict of guilty of criminal sexual conduct in the third degree, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b), and the defendant was later sentenced to a term of 10 to 15 years in prison.

On appeal, defendant's appellate counsel presents seven issues for review and disposition. Al-

though three of those issues are essentially procedural variations on a single, substantive, legal theme, we deem it appropriate to consider the questions separately.

## SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence adduced at trial to support his conviction and he was therefore denied due process in contravention of both the state and federal constitutions, US Const, Am XIV and Const 1963, art 1, § 17.

The pertinent standard of review is summarized succinctly in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980):

"Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant can be convicted of a criminal offense * * *."

In the present case, the defendant asserts that, because there was no indication in the record that the complainant advised or communicated to the defendant that she did not wish to engage in sexual intercourse, the defendant did not know that the sexual relations were nonconsensual and, therefore, could not have intended to engage in those relations by force or coercion. Without some manifestation of the complainant's unwillingness to engage in sexual relations, defense counsel argues that defendant could not have known of her nonconsent and, therefore, could not have intended to engage in sexual relations against the complainant's will but may rather have assumed

that signs of physical resistance by the complainant were what defense counsel terms "the final token manifestations of modesty".

Defendant in the case at bar was convicted of third-degree criminal sexual conduct. As alleged here, that offense required proof beyond a reasonable doubt that sexual penetration was accomplished by force or coercion. MCL 750.520d(1)(b); MSA 28.788(4)(1)(b). Force or coercion includes, but is not limited to, situations where the actor overcomes the victim through the actual application of physical force or physical violence or where the actor coerces the victim to submit by threatening to use force or violence on the victim and the victim believes that the actor has the present ability to execute these threats. MCL 750.520b(1)(f)(i) and (ii); MSA 28.788(2)(1)(f)(i) and (ii). *People v Payne,* 90 Mich App 713; 282 NW2d 456 (1979); *People v Khan,* 80 Mich App 605; 264 NW2d 360 (1978), *lv den* 402 Mich 903 (1978).

The statute is silent on the defense of consent. However, this Court has previously stated that the statute impliedly comprehends that a willing, noncoerced act of sexual intercourse between persons of sufficient age who are neither mentally defective or incapacitated nor physically helpless is not criminal sexual conduct. *People v Khan, supra,* 619, fn 5. See also *People v Hearn,* 100 Mich App 749; 300 NW2d 396 (1980).

Although consent therefore precludes conviction of criminal sexual conduct in the third degree by force or coercion, the prosecution is not required to prove nonconsent as an independent element of the offense. If the prosecution offers evidence to establish that an act of sexual penetration was accomplished by force or coercion, that evidence necessarily tends to establish that the act was

nonconsensual. *Cf. People v Oliphant,* 399 Mich 472, 504, 510, fn 8; 250 NW2d 443 (1976) (LEVIN, J., *dissenting).* As noted earlier, the statute defines "force or coercion" to include situations in which the actor overcomes the victim through the actual application of physical force or physical violence, coerces the victim to submit by threatening to.use force or violence and has the apparent present ability to execute those threats, or coerces the victim to submit by threatening to retaliate in the future against the victim or someone else and has the ability to execute that threat.

If it is established that the actor *overcame the victim,* it necessarily follows that the victim's participation in the act was nonconsensual.

Likewise if the actor *coerces the victim to submit* by threats of present or future harm, it necessarily follows that the victim engaged in the act nonconsensually. In short, to prove force or coercion as those terms are defined in the statute is to establish that the victim did not consent.

Defense counsel however would require that there be proved a specific intent to overcome the will of the victim and, as a necessary precondition, knowledge on the part of the actor that the victim was not engaging in the act consensually. In short, defense counsel would have us require some manifestation of nonconsent by the victim. In our judgment, this is simply a suggestion that we require proof that the victim resisted the actor or at least expressed an intent to resist. The express language of the statute precludes any such requirement, MCL 750.520(i); MSA 28.788(9).

We are satisfied that there was evidence adduced at trial which would justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt of the offense with

which he was charged and of which he was convicted. That being the case, the evidence is sufficient and the conviction does not contravene the due process requirement of the state and federal constitutions. *People v Hampton, supra.*

### Denial of Defendant's Motion to Quash

Defendant next argues that the examining magistrate abused his discretion in binding the defendant over for trial and that the circuit judge correspondingly erred in failing to quash the information, both the magistrate and the trial judge erring by reason of the fact that the element of force was not established by the evidence presented at the preliminary examination.

As a general rule it is the duty of the examining magistrate to bind the defendant over for trial if it appears that a crime has been committed and there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931; *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953); *People v Kubasiak,* 98 Mich App 529; 296 NW2d 298 (1980), *lv den* 409 Mich 948 (1980). While positive proof of guilt is not required, there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976).

A magistrate's determination at the preliminary examination should not be disturbed on appeal unless a clear abuse of discretion is demonstrated. *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979); *People v Talley,* 410 Mich 378; 301 NW2d 809 (1981); *People v King,* 412 Mich 145; 312 NW2d 629 (1981).

In the present case, there was evidence from which the magistrate could properly conclude that there was probable cause to believe that this defendant engaged in sexual intercourse with the complainant by means of force or coercion. The testimony at the preliminary examination was that the defendant told the complainant that he wanted somebody to "fuck". Her response was that she did not do those things. The defendant turned off the lights, went over to the complainant, and pulled her to the floor. He then removed her clothing. The complainant was scared and did not know what to do. She was penetrated by the defendant. The complainant further testified that she did not consent to have intercourse with the defendant and that it was done against her will.

In light of that testimony, we cannot say that the magistrate erred in binding the defendant over for trial or that the circuit judge erred in denying the motion to quash.

## INSTRUCTIONS

The defendant argues that the trial court erred in failing to instruct the jury on the defendant's theory of the case. However, counsel on appeal concedes that there was neither a request by trial counsel for such an instruction nor an objection to its omission. The trial judge's obligation to give instructions on the theories of the parties exists only where such instructions are requested and supported by the evidence. GCR 1963, 516.7(b); *People v Stubbs,* 99 Mich App 643; 298 NW2d 612 (1980). Because there was no request or objection here, the trial court had no obligation to instruct on theories and there is no error in this regard.

Defendant also alleges however that the trial judge failed to adequately instruct the jury on the *issues* in the case. GCR 1963, 516.7(a) provides that the court *shall* present to the jury the issues in a case.

Defendant asserts that the trial court should have explained to the jury that the complainant's consent to the act of sexual intercourse would preclude a conviction. As noted earlier, this issue is closely related to the defendant's earlier claim that the evidence at trial was insufficient to support a conviction. For those reasons earlier set forth, we are of the opinion that the court's admittedly correct instructions, taken directly from CJI 20:4:01 and 20:4:06, regarding the necessary elements of criminal sexual conduct in the third degree, implicitly required a finding that the act of sexual intercourse was nonconsensual before there could be a conviction. That being so, the two quite simple issues were properly presented for consideration by the jury: Was there penetration and was it accomplished by force or coercion?

Moreover, in *People v Provience,* 103 Mich App 69, 73; 302 NW2d 330, *lv den* 411 Mich 1058 (1981), where that defendant also claimed that the trial court erred by not instructing the jury in a third-degree criminal sexual conduct case on the effect of consent, this Court stated:

"Defendant's second claim is that the trial court erred by not instructing the jury that if the defendant reasonably believed that the complainant consented, he could not be convicted of third-degree criminal sexual conduct. This issue has not been preserved for appeal. Trial counsel never requested the specific instruction which appellate counsel now claims should have been

given. *People v Barker,* 97 Mich App 253; 293 NW2d 787 (1980)."

Similarly, the issue has not been properly preserved for appeal in this case.

In recognition, of course, that this Court in *People v Hearn,* 100 Mich App 749, 755; 300 NW2d 396 (1980), said, in a case where there were no requests for instructions on consent:

"In the instant case, Hearn's theory of defense was that the sexual intercourse was consensual. The court instructed the jury solely as to the two elements of the offense, that is, sexual penetration and the defendant being armed with a weapon. This was not sufficient. Defendant's theory of defense should have been presented to the jury in the instructions."

However, the aggravating circumstance in *Hearn* was not force or coercion but rather "being armed with a weapon". Proving in *Hearn* that the defendant was armed with a weapon at the time of the act would not, in and of itself, prove nonconsent as would proving that the act was committed by force or coercion in this case. In other words, the issue of consent is not necessarily implicated in a decision as to whether the defendant was armed with a weapon whereas the question of consent is, of necessity, addressed in a determination as to whether the act was committed by force or coercion.

## PROSECUTOR'S OPENING STATEMENT

Defendant argues that he was denied a fair trial by the prosecutor's reference in his opening statement to an alleged hearsay statement by one of the witnesses and by the prosecutor's comment on

the fact that the defendant had a constitutional right not to testify.

In his opening statement to the jury, the prosecutor made the following remarks:

"And after he [David Heyboer] had found this out, then he began exploring her [complainant]—What she should do about it, what the proper alternatives were. And he is an experienced police officer, and I'm sure has talked with victims of sex related crimes, and encouraged her to report it, and told her that sort of line, well, if he did this to you, he'll do it to somebody else, and you have an obligation to report that.

\* \* \*

"Now as I've stated to you, this is my opening statement. This is the evidence that will be presented during the course of the people's case. Mr. Jansson does not have any obligation to present any case on his behalf. I have no idea what kind of—whether he will testify. He doesn't have to testify, if he doesn't want to. That's his constitutional right. And I don't mean to suggest anything by that. All I'm saying is this: That this is an outline of what the people will present. How the entire course of the trial is going to go beyond that, I am not here to say, or make any judgments, or say anything about it at this point in time. That's what the people will present."

At the close of the prosecutor's opening statement, defense counsel objected to the prosecutor's remarks. The judge offered to give a curative instruction. However, defense counsel requested a mistrial. The court denied the motion for mistrial and gave the following instructions:

"*The Court:* Ladies and gentlemen of the jury, this morning I twice read to you certain instructions. I want to repeat one part of that instruction: The law does not

require a defendant to prove his innocence, or to produce any evidence whatsoever.

"And I now instruct you to absolutely disregard anything the prosecuting attorney may have said in his opening statement with respect to that issue. You may proceed."

Defendant argues that he was denied a fair trial by the prosecutor's reference in his opening statement to witness David Heyboer's comments to the complainant. Defendant alleges such remarks are hearsay. The prosecution asserts that either the statement was not hearsay because it was not offered to prove the truth of the matter asserted or it was admissible as a state of mind exception to the hearsay rule under MRE 803(3). On this point, suffice it to say the trial court excluded the testimony when in fact offered and we see no error in his so doing. Neither the declarant's state of mind nor the substance of the declaration was relevant to the issue in the case.

The trial court however properly denied the defendant's motion for mistrial. In *People v Conte,* 104 Mich App 73, 76-77; 304 NW2d 485 (1981), this Court held that reference by a prosecutor to statements which were arguably excludable hearsay does not require the granting of a motion for mistrial. We stated there:

"The trial court properly denied defendant's motion for a mistrial. The prosecutor's opening statement included reference to statements that were arguably excludable hearsay. Pursuant to GCR 1963, 507.1, the opening statement is the appropriate time for a party to make a full and fair statement of facts which he intends to prove during the case. The admissibility of evidence is to be determined at the time the evidence is introduced at trial not during the opening statement.

Defendant's argument that the prosecutor's opening statement was improper is without merit."

Although our ruling would be otherwise were we convinced that the prosecutor intentionally interjected references to evidence he knew to be inadmisible in his opening statement, the record before us supports no finding of bad faith on the part of the prosecutor and the trial court therefore was correct in its denial of the motion for mistrial.

As noted above, the defendant also argues that the opening statement was so prejudicial as to require a mistrial because of the prosecutor's reference to the defendant's right not to testify.

As a general rule, comment by the prosecutor upon a defendant's right to remain silent, his failure to take the stand or his failure to call witnesses on his behalf is error. *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979). However, whether the prosecutor's comments amount to error so grievous as to necessitate a mistrial is a question entrusted to the discretion of the trial judge whose decision in the matter will not be reversed absent a clear abuse of discretion. *People v Duncan,* 96 Mich App 614; 293 NW2d 648 (1980).

In *People v Bommarito,* 110 Mich App 207, 209; 312 NW2d 214 (1981), the prosecutor stated: "The defendant, however, is not required to indicate what witnesses he intends to call, and has not done so, so at this point in time I have no idea who the defense witnesses may be or what their theory of the case is." Defendant moved for a mistrial immediately upon the conclusion of the prosecutor's opening statement. Defendant argued that he had a constitutional right to remain silent and not to present any evidence or witnesses whatsoever. He also argued that the prosecutor was prohibited from commenting on his silence or

his failure to present witnesses. The trial judge granted defendant's motion for a mistrial even though he found that the prosecutor did not have "any dire purposes in making the remarks that he did". *Id.,* 210.

In reviewing the remarks in the context of a double jeopardy claim, this Court concluded that the granting of a mistrial was not a "manifest necessity", that it was unlikely the remarks would have led to reversal of the defendant's conviction on appeal, and that a properly framed instruction to the jury "would have obviated the slight error and prejudice the defendant may have suffered from the prosecutor's opening statement." *Id.,* 211.

Similarly, in this case, the trial judge's instruction cured any prejudice that defendant may have suffered from the prosecutor's opening statement.

## PROSECUTOR'S CLOSING ARGUMENT

It is next claimed that the defendant was deprived of his right to a fair trial when the prosecutor in argument to the jury personally vouched for the truthfulness of the complainant and expressed his personal opinion as to the guilt of the defendant.

In his closing argument to the jury, the prosecutor stated:

"I want you to picture her [complainant] up on that stand, how she testified, because you're going to have to decide something. If you're going to come back in this courtroom, and if you're going to report a not guilty verdict in favor of that man, you're going to tell me, and you're going to tell this young girl that she lied, she got up on that witness stand, and she sat there for I don't know how long, and lied, and everything she told you was a lie, or everything at least about how she

came to have sexual intercourse with that man on January the 7th was a lie.

"An then you'll have to figure out why she would do that. And you're going to have to assign the reason why she would come in here and lie about that."

In his rebuttal argument, the prosecutor stated:

"He [defendant's counsel] refers to John Stedman, the 'pinnacle of the prosecution's case', and would have you believe Mr. Stedman was my star witness. Ladies and gentlemen, I was under a legal obligation to call Mr. Stedman to the witness stand. I do not now nor did I at the time, rely on his truthfulness in any way, shape, or form. He was not the pinnacle of my case. He was somebody who I called because I had to. And any inference Mr. Neil may have suggested to you to the contrary, I submit, is wrong.

\* \* \*

"Ladies and gentlemen, that man is guilty, and the evidence proves it. I ask for that verdict, guilty of criminal sexual conduct in the third degree. Thank you."

Defendant first argues that he was deprived of a fair trial because the prosecutor improperly vouched for the credibility of the complainant and attacked the credibility of witness John Stedman.

Initially, it should be noted that defense counsel did not object to the prosecutor's statements during trial. It is well established that the absence of objection during trial precludes appellate review of alleged prejudicial prosecutorial remarks, unless the prejudicial effect was so great that it could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice. *People v Rojem,* 99 Mich App 452, 459; 297 NW2d 698 (1980); *People v Lasenby,* 107 Mich App 462, 467; 309 NW2d 572

(1981); *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977).

Further, as an advocate, the prosecutor is free to relate the facts to his theory of the case and to argue the evidence and all reasonable inferences from it to the jury. *People v Ernest Smith,* 87 Mich App 18; 273 NW2d 573 (1978). A prosecuting attorney has the right to comment upon the testimony in a case, to argue upon the facts and evidence that a witness is not worthy of belief and to contend that a defendant is lying. *People v Caldwell,* 78 Mich App 690; 261 NW2d 1 (1977).

Finally, where improper prosecutorial remarks are made in response to issues previously raised by a defense counsel, they do not constitute reversible error. A prosecutor may properly respond to the innuendos of defense counsel that his witness is fabricating testimony. *People v Giombetti,* 97 Mich App 399, 405; 296 NW2d 41 (1980), *rev'd on other grounds sub nom Adkins* 411 Mich 934; 308 NW2d 98 (1981).

In the case at bar, defense counsel stated on several occasions that complainant was lying. Defense counsel also described witness John Stedman as the "pinnacle" of the prosecution's case. Hence, the prosecutor committed no error in his closing argument when he made reference to the credibility of the witnesses.

Second, defendant argues that he was denied a fair trial on the ground that the prosecutor expressed his personal belief as to the guilt of the defendant. The prosecutor may not attempt to place the prestige of his office behind the assertion that the defendant is guilty, however, he may properly argue that the evidence establishes that the defendant is guilty. *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973). Moreover, provided

the prosecutor's closing argument is based upon the evidence and does not suggest that the jury decide the case upon the authority of the prosecutor's office, the words "I believe" or "I want you to convict" are not improper. *People v Yearrell,* 101 Mich App 164; 300 NW2d 483 (1980).

In the case at bar, the prosecutor's statements do not constitute the expression of a personal belief in the defendant's guilt but rather are based upon the evidence. As such they are proper. Furthermore, as defense counsel did not object to the prosecutor's statements during trial and any error could have been cured by a cautionary instruction, appellate review is precluded. *People v Lasenby, supra.*

### Reference to Polygraph Examination

On recross-examination by defense counsel, Officer David Heyboer testified as follows:

"*Q.* Did you have any contact with Officer Hoatlind?
"*A.* Pardon me?
"*Q.* With Officer Hoatlind?
"*A.* Yes, sir, I have.
"*Q.* About this case?
"*A.* Yes, sir, I have.
"*Q.* How many times?
"*A.* Approximately three times."

On redirect-examination by the prosecution, Officer Heyboer stated:

"*Q.* Well, what was the nature of that?
"*A.* The first one was also a follow-up, which was conducted in conjunction with Officer Franklin's follow-up on the investigation. And then I believe it was about two weeks later when Carolyn failed to show up for a

polygraph, and he called me and asked if I knew her whereabouts.

"*The Court:* Wait a minute. I will instruct the jury to disregard any testimony about a polygraph. I would direct the witness to avoid that subject."

Defense counsel made a motion for mistrial, which was denied. The court asked defense counsel if he wanted "more of a cautionary instruction". Defense counsel answered that he did not. On appeal, defendant argues that the reference by Officer Heyboer to the fact that the complainant failed to show up for a polygraph so prejudiced him that he was denied a fair trial.

Convictions have been reversed where the fact of taking a polygraph examination or its results were introduced to bolster a witness's credibility. *People v Scotts,* 80 Mich App 1; 263 NW2d 272 (1977).

We have declined to reverse where the reference to polygraph testing was brief, inadvertent and isolated and was not pursued beyond the initial remark. Likewise, where the record does not establish that the witness or subject in fact took a polygraph test, where no test results were introduced into evidence and where a cautionary instruction was given, the mention of a polygraph by a witness does not mandate reversal. *People v Scotts, supra; People v Murry,* 108 Mich App 679, 684; 310 NW2d 836 (1981).

Defendant here primarily relies on *People v Yatooma,* 85 Mich App 236; 271 NW2d 184 (1978), *lv den* 407 Mich 931 (1979). In *Yatooma,* the Court considered five factors to be weighed in reviewing the prejudicial effect of the admission of evidence of a polygraph examination: (1) whether the defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4)

whether the reference was an attempt to bolster the witness's credibility; and (5) whether the results of the test rather than merely the fact that a test had been conducted were admitted. The Court held that the statement by a witness that a part of his "deal" with the prosecutor's office to obtain immunity was that he pass a lie detector test was reversible error. The Court emphasized that "the results of the test were made known to the jury rather than just the fact of the test, since the witness stated that he had to 'pass' the test before the immunity was approved". *Id.,* 240. The Court also emphasized the effect of the remark on the issue of credibility.

In the case at bar: (1) a cautionary instruction was given; (2) the reference was inadvertent; (3) there was only one reference; (4) the reference does not appear to be an attempt to bolster a witness's credibility, as it refers to the complainant's own failure to show up for a polygraph examination; and (5) the only mention of the test was in regard to the fact that it was *not* given. Consequently, it is concluded that any prejudice caused by the reference to the complainant's failure to appear for a scheduled polygraph was cured by the court's cautionary instruction.

## EXAMINATION OF PRESENTENCE REPORT

Defendant finally claims that he was deprived of due process because he was not afforded the opportunity of personally examining the presentence report.

The record reflects and no one disputes that defense counsel had an opportunity, prior to sentencing, to read the presentence report. At sentencing, counsel stated:

"Thank you, your Honor. I would like the record to reflect that I have had an opportunity to talk to Mr. Jansson, and I have also had an opportunity to review the presentence investigation report. There were a number of problems I had with the report which I discussed with the court in chambers. And I also indicated to the court that it's our intention to examine the possibility of a motion for new trial, and the court agreed to hear the motion for new trial subsequent to the sentence. And I assume that if the court feels that a new trial is in order, the sentence would be vacated upon the granting of a new trial. Therefore, we are ready to proceed at this time. And I've discussed the matter with the court in chambers, and have nothing further to add at this time."

The trial judge then asked the defendant if he had anything to say before sentence was imposed. The defendant replied:

*"The Defendant:* Well, yes, I do. This court granted me permission to represent myself, isn't that correct, your Honor?

*"The Court:* You have the right, I don't have to give it to you.

*"The Defendant:* Okay. I have not examined the presentence investigation report, and under General Court Rules, I want that right. So I do want to examine that presentence investigation report before sentence is passed. Secondly, the amended motion for new trial I filed with this court was dated for over a month ago, and I think that should be heard before sentence should be passed, also. But I do want an opportunity to examine the presentence investigation report, at least those portions of the report I am allowed to examine, prior to sentencing.

*"The Court:* It is the sentence or judgment of this court that you be remanded to the custody of the Michigan Corrections Commission, State Prison of Southern Michigan, in Jackson, Michigan, for a period of not less than 10 years, nor more than 15 years, and that sentence to commence January 10, 1979."

On appeal, defendant argues that he was denied due process when the trial judge imposed sentence without affording defendant personally an oportunity to examine the presentence report as required by GCR 1963, 785.12, which provides in pertinent part:

"The sentencing court shall permit the defendant's attorney, or if the defendant is not represented by counsel, the defendant, to inspect the presentence report. The prosecution must also be shown the report. Both parties must be given an opportunity at the time of sentencing to explain or controvert any factual representations in the presentence report."

The rule originally provided for the defendant *and* his attorney to inspect the presentence report. 390 Mich xxxix. However, the rule was amended prior to its effective date.

In interpreting GCR 1963, 785.12, this Court has held that due process is satisfied, "so long as a defendant has an opportunity to challenge the accuracy of the report and to tell the court about any additional facts which might clarify or explain the information in the report". *People v Books,* 95 Mich App 500, 503-504; 291 NW2d 94 (1980).

Moreover, in *People v Oster (On Resubmission),* 97 Mich App 122, 139-140; 294 NW2d 253 (1980), *lv den* 411 Mich 920 (1981), this Court stated: "The law on a defendant's right to inspect his presentence report is relatively clear." The *Oster* Court quoted GCR 1963, 785.12. It then added: "Quite literally, this provision does not require that a defendant personally review a copy of the presentence report, so long as the attorney is given the opportunity to review the report."

More recently in *People v Matzat,* 108 Mich App

327, 331; 310 NW2d 231 (1981), this Court stated that GCR 1963, 785.12 provides three essential rules regarding presentence report disclosure:

"Initially, the sentencing court must divulge the contents of the report to the defendant or defense counsel, as well as to the prosecuting attorney. Each side must then be afforded a full opportunity to contest or explain factual assertions contained in the report. Finally, if the sentencing judge deems it advisable to exclude certain factual, opinion, or diagnostic information in the report from disclosure, an explanation of the basis for the exclusion must be provided."

In the case at bar, the record reveals that the defendant was represented by counsel, that the contents of the presentencing report were divulged to defense counsel, and that both defense counsel and defendant were afforded a full opportunity to contest the factual assertions contained in the report. Accordingly, it is concluded that the requirements of GCR 1963, 785.12 were met.

It should be noted that there is no claim in this Court that the defendant was in fact representing himself at sentencing and thus was entitled to examine the presentence report personally. We also note that the defendant's right of allocution is, in our judgment, more meaningful if the defendant is granted the right to personally review the presentence report whether represented or not. We simply hold that the court rule does not so require.

All of the issues raised by the defendant have been considered. We are persuaded that there is no reversible error and that the defendant was afforded the fair trial to which he was entitled. His conviction is affirmed.