PEOPLE v AMOS

Docket No. 87338. Submitted May 5, 1987, at Grand Rapids. Decided
    September 10, 1987. Leave to appeal applied for.
    Tinetta Marie Amos was convicted of second-degree murder,
    Calhoun Circuit Court, James C. Kingsley, J. Defendant ap-
    pealed.
        The Court of Appeals *held:*
        1. The trial court did not err in admitting the testimony of
    defendant's son against her, as the Court of Appeals declined to
    adopt a parent-child testimonial privilege.
        2. The court did not err in failing to give a sua sponte
    instruction on imperfect self-defense. First, there was no objec-
    tion to the jury instructions and the alleged error is deemed
    waived unless a miscarriage of justice results. Second, the
    imperfect self-defense doctrine did not apply to the facts of this
    case.
        Affirmed.

1. WITNESSES — PARENT-CHILD PRIVILEGE.
    The Court of Appeals declines to adopt a parent-child testimonial
        privilege.

2. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.
    Alleged errors in jury instructions are deemed waived, absent an
        objection thereto in the trial court, unless a miscarriage of
        justice results.

3. CRIMINAL LAW — JURY INSTRUCTIONS — THEORIES OF THE PARTIES.
    A trial judge is required to give instructions on the theories of
        the parties only where such instructions are requested and
        supported by the evidence.

REFERENCES

Am Jur 2d, Criminal Law §§ 183 *et seq.*
Am Jur 2d, Homicide §§ 139 *et seq.;* 480, 514 *et seq.*
Am Jur 2d, Trial §§ 573 *et seq.*
Am Jur 2d, Witnesses §§ 141 *et seq.*
Accused's right, in homicide case, to have jury instructed as to both
    unintentional shooting and self-defense. 15 ALR4th 983.
Duty of trial court to instruct on self-defense, in absence of request
    by accused. 56 ALR2d 1170.

4. CRIMINAL LAW — SELF-DEFENSE — DEFENSES — CRIMINAL JURY
    INSTRUCTIONS.

   A criminal defendant acted in lawful self-defense where 1) he
   honestly believed himself to be in danger, 2) the danger was of
   serious bodily harm or death, and 3) the action taken by the
   defendant appeared at the time to be immediately necessary
   (CJI 7:9:01).

5. HOMICIDE — DEFENSES — IMPERFECT SELF-DEFENSE — SECOND-DE-
    GREE MURDER.

   The doctrine of imperfect self-defense is a qualified defense which
   can mitigate an act of second-degree murder to voluntary
   manslaughter; the doctrine applies only where the defendant
   would have had a right to self-defense but for his actions as the
   initial aggressor.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Jon R. Sahli,* Chief Assistant Prosecutor, for the people.

State Appellate Defender (by *P. E. Bennett*), for defendant on appeal.

Before: CYNAR, P.J., and SAWYER and J. S. THORBURN,* JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction of second-degree murder, MCL 750.317; MSA 28.549. Following the conviction, defendant was sentenced to a term of from five to twenty-five years in prison. We affirm.

Defendant's conviction arose out of the November 2, 1984, stabbing death of Rubin Smith. Defendant was originally charged with open murder, MCL 750.316; MSA 28.548. The jury was unable to reach a verdict on this charge and the trial court granted defendant's motion for a directed verdict as to the first-degree murder charge reducing the charge to second-degree murder.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

At the second trial, the prosecution asserted that defendant had stabbed and killed Smith with the requisite intent and without excuse or justification. The stabbing occurred outside the home of Jack Atchison. Apparently, on November 2, 1984, Atchison put on an all-day party at his home. Defendant arrived at the party in the morning with her two-year-old son, Atari, and some other friends. The victim arrived sometime that day in the late afternoon or early evening hours.

During the course of the evening, defendant was seen removing a knife from the kitchen drawer and placing it in her purse. Defendant told one of the guests that she was taking the knife for protection.

At 7:00 P.M., defendant and Smith argued about money in the living room of the Atchison household. At that point, defendant allegedly slapped Smith and he pushed her aside.

Subsequently, defendant left the Atchison home with her friend Jacqueline Maxwell. Once outside, Maxwell proceeded to walk home while defendant remained on the Atchison lawn area. Simultaneously, Maxwell saw defendant's other son, Terrance Amos, walking toward the Atchison home. Terrance testified that, when he arrived at the Atchison home, he observed his mother near Smith's car, beside a tree.

When Smith reached his car, he and defendant argued once more. Thereafter, Smith went across the street, picked up a rock and a stick, and approached the defendant. She told him to drop the rock and hand her the stick, which Smith did. Then, defendant and Smith began "tussling." Afterwards, defendant stabbed Smith and she bent over and pulled the knife from Smith's chest.

At trial, defendant's son, Terrance, testified in part as follows regarding the stabbing:

*Q.* Did he [Smith] have the rock and the stick in his hands then?

*A.* Yeah.

*Q.* What did your mom say to him?

*A.* Drop the stick.

*Q.* Did she say anything else?

*A.* No.

*Q. Did she say: "Drop the stick or I'll kill you"?*

*A.* Yeah.

*Q.* And what did Limos [Smith] do then?

*A.* Dropped the stick.

*Q.* What did your mom do?

*A.* That's when she stabbed him.

*Q. Can you say that a little louder?*

*A. Then that's when she stabbed him.* [Emphasis added.]

On appeal, defendant urges this Court to recognize a parent-child testimonial privilege and hold that Terrance was barred from testifying against defendant at her trial. There was no objection by defense counsel to Terrance's testimony. Under such circumstances, this Court will not review the issue in the absence of manifest injustice. *People v Bright,* 126 Mich App 606, 609; 337 NW2d 596 (1983). We conclude that defendant has not preserved the issue. However, we will address the issue in order to resolve whether a parent-child privilege exists or should exist in Michigan.

In a recent case, *People v Dixon,* 161 Mich App 388; 411 NW2d 760 (1987), a panel of this Court had an opportunity to address the issue of a parent-child testimonial privilege in this state. The *Dixon* panel concluded that Michigan does not recognize such a privilege nor would one be adopted by this Court. The *Dixon* majority reasoned that the recognition of a new privilege should be left up to the Legislature. We agree.

We recognize that, in the past years, this issue

has been the subject of considerable scholarly attention. See Coburn, *Child-Parent Communications: Spare the Privilege and Spoil the Child,* 74 Dick L Rev 599 (1969); Lemons, *From the Mouths of Babes: Does the Constitutional Right of Privacy Mandate a Parent-Child Privilege?,* 1978 BYU L Rev 1002 (1978); Note, *Parent-Child Loyalty & Testimonial Privilege,* 100 Harv L Rev 910 (1987).

The parent-child testimonial privilege is currently recognized by the federal district court of Nevada and by some New York state courts. In Nevada, the privilege was first recognized in *In re Agosto,* 553 F Supp 1298, 1325 (D Nev, 1983). That case held that the privilege includes not only confidential communications but also any testimony by a parent against a child or vice versa unless the witness waives the privilege. The privilege is less extensive in New York, prohibiting only confidential communications made by a child of any age to his parents or vice versa. See *People v Fitzgerald,* 101 Misc 2d 712; 422 NYS2d 309 (1979), and *In re A & M,* 61 AD2d 426; 403 NYS2d 375 (1978). Two jurisdictions have enacted some form of parent-child privilege by statute. See Idaho Code § 9-203(7) and Minnesota Statutes § 595.02(i).

However, the majority of jurisdictions have rejected this privilege. See *In re Terry W,* 59 Cal App 3d 745; 130 Cal Rptr 913 (1976); *Marshall v Anderson,* 459 So 2d 384 (Fla App, 1984); *People v Sanders,* 99 Ill 2d 262; 457 NE2d 1241 (1983); *Three Juveniles v Commonwealth,* 390 Mass 357; 455 NE2d 1203 (1983), cert den 465 US 1068; 104 S Ct 1421; 79 L Ed 2d 746 (1984); *In the Matter of Gail D,* 217 NJ Super 226; 525 A2d 337 (1987); *In re Grand Jury Subpoena,* 740 F2d 816 (CA 11, 1984); *United States v Jones,* 683 F2d 817 (CA 4, 1982); *United States v Penn,* 647 F2d 876 (CA 9, 1980); *United States v Davies,* 768 F2d 893 (CA 7,

1985), cert den 474 US 1008; 106 S Ct 533; 88 L Ed 2d 464 (1985).

We are in agreement with the majority view in that we decline to adopt a parent-child testimonial privilege. Basically, there is no Michigan statute or court rule or persuasive authority from other jurisdictions which compels us to create a parent-child privilege. Since we decline to recognize the parent-child testimonial privilege, we conclude that Terrance could testify regarding the stabbing incident.

We also reject defendant's second argument wherein she claims that the trial court erred by failing to sua sponte instruct the jury on "imperfect self-defense." There was no objection by defense counsel. In the absence of an objection, alleged errors in jury instructions are deemed waived unless a miscarriage of justice results. *People v Collins,* 158 Mich App 508, 512; 405 NW2d 182 (1987).

In *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975), cert den 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), our Supreme Court stated that the instructions to the jury must include all elements of the crime charged and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them.

In *People v Cheatham,* 135 Mich App 620, 627; 354 NW2d 282 (1984), this Court stated the following regarding sua sponte instruction by a trial court on a defendant's theory of the case:

> Accordingly, we do not believe that the trial court was obliged to give any *sua sponte* instruction setting forth either party's theory. In this regard, we choose to follow the reasoning set forth in *People v Gary Wilson,* 122 Mich App 1; 329

NW2d 513 (1983); *People v Jansson,* 116 Mich App
674; 323 NW2d 508 (1982); *People v Trammell,* 70
Mich App 351; 247 NW2d 311 (1976), and *People v
Peery,* 119 Mich App 207; 326 NW2d 451 (1982).
We disagree with those panels which have held
that a trial court must give a full *sua sponte*
instruction describing a defendant's theory even in
the absence of a request for such an instruction,
*Cf., People v Gayton,* 81 Mich App 390; 265 NW2d
344 (1978); *People v Stanley Jones,* 69 Mich App
459; 245 NW2d 91 (1976); *People v Hearn,* 100
Mich App 749; 300 NW2d 396 (1980). The rule
announced in those cases is inconsistent with the
language of GCR 1963, 516.7, which presupposes a
request for an instruction as to a party's theory.

In the instant case no request was made for the
imperfect self-defense instruction. Therefore, we
conclude, based on those panels which reject sua
sponte instruction by a trial court, that there was
no error.

Moreover, even if we follow the line of cases
calling for sua sponte instruction by a lower court,
we nonetheless conclude that there was no error.

The test for determining whether a defendant
has acted in lawful self-defense is found in CJI
7:9:01, and self-defense requires: (1) defendant's
honest belief that he or she was in danger; (2) the
degree of danger was a fear of serious bodily harm
or death; and (3) the action taken by defendant
appeared at the time to be immediately necessary,
i.e., a defendant is permitted to use the amount of
force necessary to defend himself or herself. See
also *People v Vail,* 49 Mich App 578, 592-593; 212
NW2d 268 (1973), rev'd on other grounds 393 Mich
460; 227 NW2d 535 (1975); *People v Deason,* 148
Mich App 27, 31; 384 NW2d 72 (1985).

"Imperfect self-defense" is a qualified defense
which can mitigate an act of second-degree murder
to voluntary manslaughter. *People v Morrin,* 31

Mich App 301, 311, n 7; 187 NW2d 434 (1971), lv den 385 Mich 775 (1971). In Michigan, the doctrine applies only where the defendant would have had a right to self-defense but for his or her actions as the initial aggressor. *People v Vicuna,* 141 Mich App 486, 493; 367 NW2d 887 (1985).

In this case, defendant did not assert imperfect self-defense. Instead, she argued that she acted in self-defense and stabbed Smith believing that he was preparing to swing a stick at her for the second time. We find that the evidence does not support defendant's claim for an imperfect self-defense instruction. The people's evidence indicated that Smith approached defendant with the fence plank but dropped it at defendant's request shortly before he was stabbed. Self-defense was the only issue before the jury because the jury had to determine initially if defendant acted in self-defense. Given the evidence offered as to the nature and circumstances of the killing, the question whether defendant was the first aggressor was not an issue. Hence, we find no error in the trial court's failure to sua sponte instruct on "imperfect self-defense."

Affirmed.