*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KRISTI MARIE GESCH, also known as KRISTI
MARIE GILBERT,

        Defendant-Appellant.

UNPUBLISHED
July 15, 2021

No. 348866
Wayne Circuit Court
LC No. 18-008908-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM KARL ARAND,

        Defendant-Appellant.

No. 350056
Wayne Circuit Court
LC No. 18-008908-01-FC

---

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendants Kristi Gesch and William Arand were tried jointly, before the same jury. The jury found Gesch guilty of assault with intent to commit murder (AWIM), MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, two counts of felonious assault, MCL 750.82, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury found Arand guilty of these same offenses, as well as an additional count of felon in possession of a firearm, MCL 750.224f, and felony-firearm count

-1-

related to that offense. In these consolidated appeals,[1] Gesch appeals as of right in Docket No. 348866, and Arand appeals as of right in Docket No. 350056. We affirm defendants' convictions in each appeal, but vacate Gesch's sentences and remand for resentencing in Docket No. 348866.

## I. BASIC FACTS

Defendants' convictions arise from the nonfatal shooting of Joseph Gilbert and his girlfriend, Angela Pratt. The prosecution's theory was that Gesch wanted to kill Gilbert, her ex-husband, and that she plotted with Arand, her current boyfriend, to commit the offense. The prosecution presented evidence that Gilbert was driving his vehicle with Pratt as a passenger when their vehicle was ambushed and struck by at least four bullets, one of which wounded Gilbert in the stomach. The prosecutor argued that Arand was the shooter, but that Gesch encouraged him to commit the offense and was actively involved in planning the offense. The prosecution also presented evidence that Gesch assisted Arand by providing him with Gilbert's photograph and contact information, by purchasing disposable cell phones to enable them to communicate with each other, and by possibly supplying the firearm used in the offense. The jury found defendants guilty of AWIM with respect to Gilbert and assault with intent to do great bodily harm less than murder with respect to Pratt, and also guilty of two counts each of felonious assault for the assaults against both Gilbert and Pratt, and guilty of the charged firearm offenses.

## II. DOCKET NO. 348866 (GESCH)

### A. JURY VERDICT FORM

Gesch argues that she is entitled to a new trial because the jury verdict form was constitutionally defective. Because Gesch did not object to the jury verdict form at trial, we review this issue for plain error. See *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). To qualify as a plain error, the error must be "clear or obvious." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A clear or obvious error is "one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted). An error affects substantial rights if it is prejudicial, i.e., affects the outcome of the proceedings. *Carines*, 460 Mich at 763.

Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). In *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009), this Court explained:

> Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. And even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights.

---

[1] *People v Gesch*, unpublished order of the Court of Appeals, entered October 23, 019 (Docket Nos. 348866 & 350056).

Gesch relies on this Court's decision in *Wade* to argue that the jury verdict form in this case was defective and denied her due process. In *Wade*, over the defendant's objection, the jury was given a verdict form that provided as follows:

POSSIBLE VERDICTS

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT.

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)

__ NOT GUILTY

__ GUILTY

OR

__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)

OR

__ GUILTY OF THE LESSER OFFENSE OF-INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.)

COUNT 2-WEAPONS-FELONY FIREARM

__ GUILTY

__ NOT GUILTY. [*Id*. at 465.]

The *Wade* jury was also instructed, and reinstructed, as follows:

You understand keenly in the verdict form, as to Count 1, the defendant, Mr. Wade, is charged with . . . Homicide, Murder in the First Degree, Premeditated.

You can either—this is what this instruction is, either Not Guilty or Guilty or you can then consider the lesser offense of . . . Homicide Murder in the Second Degree, if you find the evidence supports that.

If you don't find the evidence supports that and you want to consider the lesser offense, you may go on down to—you may consider the Involuntary Manslaughter, okay. That is—those are your options.

You're only going to check one box. Okay. [*Id*. (alterations in original).]

-3-

The *Wade* jury convicted the defendant of the lesser offense of involuntary manslaughter. *Id*. at 466-467. This Court held that the jury verdict form was flawed, stating:

> [T]he verdict form was defective, requiring reversal, because it did not give the jury the opportunity to return a general verdict of not guilty. We note that the verdict form would not have been defective if it had included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter. Despite the trial court's efforts to clarify the verdict form with its instructions, because of the way the verdict form was set up, the jury was not given the opportunity to find defendant *either* generally not guilty *or* not guilty of the lesser-included offenses such that his constitutional right to a trial by jury was violated. [*Id*. at 468.]

Unlike in *Wade*, the verdict form in this case gave the jury the option of finding Gesch generally not guilty of each offense. The verdict form provided:

> You may return only one verdict on each count. Mark only one box for each count on this sheet.

CT 1: ASSAULT WITH INTENT TO MURDER (JOE GILBERT)

☐ NOT GUILTY

or

☐ GUILTY

or

☐ GUILTY OF THE LESSER OFFENSE OF ASSAULT WITH INTENT TO DO GREAT BODILY HARM (JOE GILBERT)

CT 2: ASSAULT WITH INTENT TO MURDER (ANGELA PRATT)

☐ NOT GUILTY

or

☐ GUILTY

or

☐ GUILTY OF THE LESSER OFFENSE OF ASSAULT WITH INTENT TO DO GREAT BODILY HARM (ANGELA PRATT)

This verdict form is materially different from the form used in *Wade*. For each offense, the jury was provided with alternative options, including an option for a general verdict of not guilty. Unlike in *Wade*, the "not guilty" option was not limited solely to the original charged offense. Rather, each option was separated by an "or," which clearly indicated that the jury could find

Gesch either not guilty, guilty of the charged offense, or guilty of the specified lesser offense. Accordingly, Gesch has not demonstrated a plain error related to the jury verdict form.

Gesch also argues that her trial lawyer was ineffective for failing to object to the verdict form. However, because the verdict form fairly presented the available options to the jury, including the option of a general not guilty verdict, her lawyer was not ineffective for failing to object. See *People v Clark*, 274 Mich App 248, 257; 732 NW2d 605 (2007).

## B. MERE-PRESENCE INSTRUCTION

Gesch argues that the trial court erred by failing to instruct the jury on mere presence. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

The prosecution's theory at trial was that Gesch aided or abetted Arand in committing the assaults against Gilbert and Pratt. A person who procures, counsels, aids, or abets in the commission of an offense may be convicted and punished as if she directly committed the offense. MCL 767.39. Yet, a person's mere presence when a crime is committed, even with knowledge that an offense is about to be committed, is not enough to make her an aider or abettor. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Rather, among other requirements, the person must have performed some acts that assisted or encouraged the commission of the offense. *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004).

In *People v Moldenhauer*, 210 Mich App 158, 159-161; 533 NW2d 9 (1995), this Court stated:

> Defendant contends that the trial court committed error requiring reversal in denying an instruction regarding "mere presence." The trial court is required to charge the jury concerning the law applicable to the case. *People v Hearn*, 100 Mich App 749, 753; 300 NW2d 396 (1980). In *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975), the Supreme Court stated:
>
> > The instruction to the jury must include all elements of the crime charged . . . and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them.
>
> See also *People v Daniel*, 207 Mich App 47; 523 NW2d 830 (1994).
>
> Instructions are reviewed in their entirety to determine if reversal is required. *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992). Reversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights. *People v Gaydosh*, 203 Mich App 235, 237; 512 NW2d 65 (1994). Further, it has been held that the failure to give a requested instruction is error requiring reversal only if the requested instruction (1) is substantially correct, (2) was not substantially covered in the charge given to the jury, and (3) concerns an important point in the trial so that the failure to give it

-5-

seriously impaired the defendant's ability to effectively present a given defense. See, e.g., *United States v Newton*, 891 F2d 944, 949 (CA 1, 1989).

We are of the opinion that a "mere presence" instruction would not have been "substantially correct" under the circumstances of this case inasmuch as this was not a defense theory. Our appraisal of the record and defense counsel's argument show that defendant did not claim "mere presence." In *United States v Perkins*, 926 F2d 1271 (CA 1, 1991), the court said that "mere presence" implies not only an absence of criminal intent but also passivity and nonparticipation in the actual commission of crime.

\* \* \*

A fair reading of the trial court's instructions concerning the elements of the charge, the lesser offenses, and proscribed coalitions leads this Court to conclude that the instructions were adequate. Had the jury accepted defendant's version of his participation, or lack thereof, as urged by defense counsel, it would not have convicted defendant under the instructions given. Defense counsel gave an unbridled argument to the jury embracing his defensive posture and was not in any way mistaken in his presentation or misled by the denial of the instruction.

In this case, Gesch's lawyer did not rely on a "mere presence" defense. During closing argument, she argued that the testimony of the prosecution's witnesses was full of discrepancies, and they had the opportunity to refine their stories while speaking with others about the case. Gesch's lawyer maintained that Gilbert had a motive to lie to harm Gesch, that Gesch could have been truthful when she told a witness that she was in Ohio, and then Kentucky, and that store surveillance footage did not actually show Gesch purchasing disposable cell phones and no witness positively identified Gesch in any of the video footage. Gesch's lawyer also argued that cell phone location data did not establish that it was Gesch who used the phone or, pertinent to this issue, that Gesch was anywhere nearby at the time of the shooting. Instead, she contended that if anyone helped Arand, or acted as a spotter for him, it was William Gesch.

Given the chosen defense theories and the prosecutor's arguments, the trial court did not err by refusing to instruct the jury on mere presence. As in *Moldenhauer*, Gesch raised a number of defense theories, none of which consisted of an argument that she was present during the shooting, but did nothing to assist Arand. Thus, as in *Moldenhauer*, "a 'mere presence' instruction would not have been 'substantially correct' under the circumstances of this case inasmuch as this was not a defense theory." *Moldenhauer*, 210 Mich App at 160. In addition, the trial court otherwise properly instructed the jury on the elements of aiding or abetting, including that to prove Gesch's guilt under an aiding or abetting theory, the jury was required to find that Gesch "did something to assist in the commission of the crime" and that she "intended the commission of the crime alleged or must have known that the person intended its commission or that the crime alleged was a natural and probable consequence of the commission of the crime intended." Under the instructions provided, the jury could not have convicted Gesch under an aiding or abetting theory if it believed she was present, but did not do anything to assist in the commission of the crime and did not intend for the crime to be committed. Therefore, "had the jury accepted [Gesch's] version of [her] participation, or lack thereof, as urged by defense counsel, it would not have convicted

-6-

[her] under the instructions given." See *id*. at 161. Accordingly, the trial court did not err by denying Gesch's request for a mere-presence instruction.

## C. MUTUALLY EXCLUSIVE VERDICTS

Gesch next argues that her convictions of felonious assault should be vacated because they are mutually exclusive of her convictions of AWIM and assault with intent to do great bodily harm with respect to each victim. We review de novo questions regarding inconsistent verdicts. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012).

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation omitted). To convict defendant of assault with intent to do great bodily harm less than murder, the prosecution was required to prove: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). To prove a felonious assault, the prosecution is required to prove that the defendant committed "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). However, the felonious assault statute also provides that the assault must occur "without intending to commit murder or to inflict great bodily harm less than murder." MCL 750.82(1).

Gesch relies on *People v McKewen*, 326 Mich App 342; 926 NW2d 888 (2018), lv held in abeyance 943 NW2d 381 (2020), in support of her argument that her felonious assault convictions are mutually exclusive of her convictions of AWIM and assault with intent to do great bodily harm. In *McKewen*, this Court addressed whether multiple convictions for both assault with intent to do great bodily harm (AWIGBH) and felonious assault arising from a single assault are inconsistent and stated:

> In *People v Davis*, 320 Mich App 484, 494-496; 905 NW2d 482 (2017) [vacated in relevant part 503 Mich 984 (2019)], we held that in a case involving a single assault, a judgment of conviction for both AWIGBH and aggravated domestic assault is inconsistent because the crimes are mutually exclusive. As we stated in *Davis*:
>
> > Clearly, these two offenses are mutually exclusive from a legislative standpoint. One requires the defendant to act with the specific intent to do great bodily harm less than murder; the other is committed without intent to do great bodily harm less than murder. We must give effect to the plain and unambiguous language selected by the Legislature. And the plain language of the statutes reveals that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet not intend to do great bodily harm less than murder. [*Davis*, 320 Mich App at 490 (citations omitted).]

In this case, the trial court did not instruct the jury "regarding the lack of intent to do great bodily harm necessary to meet the statutory definition of [felonious assault]" because it is a "negative element" that need not be found by a jury. However, the trial court specifically instructed the jury that in order to convict defendant of AWIGBH, it had to find that he "intended to do great bodily harm." By convicting defendant on that charge, they made a finding—one we may not disturb—that defendant acted with the intent to do great bodily harm. But that finding is inconsistent with felonious assault as defined by MCL 750.82. We therefore conclude that the proper action for the trial court is to enter a judgment of conviction on the AWIGBH charge but not on the felonious-assault charge, even though the jury found defendant guilty of both. [*McKewen*, 326 Mich App at 353 (citation omitted).]

Although the *McKewen* analysis supports Gesch's position, our Supreme Court subsequently vacated the portion of the *Davis* decision on which this Court relied in *McKewen* and remanded that case with instructions to instead address whether the multiple convictions were violative of double-jeopardy protections. *People v Davis*, 503 Mich 984 (2019).[2] The Supreme Court in *Davis* noted that this Court had reframed what was actually a "double-jeopardy argument as an issue of 'mutually exclusive' verdicts," and further explained:

The Court of Appeals noted that the statutory language of AWIGBH requires a defendant to commit assault with the specific intent to do great bodily harm, whereas the statutory language of aggravated domestic assault requires a defendant to commit assault without the intent to commit great bodily harm. *Davis*, 320 Mich App at 490. The Court of Appeals reasoned that these contradictory provisions rendered the verdicts mutually exclusive and, on that basis, vacated defendant's aggravated domestic assault conviction. *Id*. at 496. In doing so, the Court of Appeals erred.

Regardless of whether this state's jurisprudence recognizes the principle of mutually exclusive verdicts, this case does not present that issue. In this case, the jury was instructed that to convict defendant of AWIGBH, it must find that defendant acted "with intent to do great bodily harm, less than the crime of murder." See MCL 750.84(1)(a). However, with respect to aggravated domestic assault, the jury was *not* instructed that it must find that defendant acted *without* the intent to inflict great bodily harm. See MCL 750.81a(3); *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979) ("While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself which the people must establish beyond a reasonable doubt.") Since, with respect to the aggravated assault conviction, the jury never found that defendant acted without the intent to inflict great bodily harm, a guilty verdict for that offense was not

---

[2] After *Davis* was remanded, we affirmed the defendant's convictions and he filed an application with the Supreme Court, which has directed that the case be scheduled for oral argument on the application. *People v Davis*, 505 Mich 1113 (2020).

mutually exclusive to defendant's guilty verdict for AWIGBH, where the jury affirmatively found that defendant acted with intent to do great bodily harm. [*Id.* (emphasis in original).]

The jury instructions in *McKewen* were similar to those in *Davis*. See *McKewen*, 326 Mich App at 353. Therefore, the Supreme Court's decision to vacate the relevant portion of this Court's decision in *Davis* undercuts this Court's analysis in *McKewen*. Moreover, because the Supreme Court order in *Davis* is a final disposition of an application that contains a concise statement of the applicable facts and the reason for the decision, it is binding on this Court and we must apply it. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

In this case, the jury was instructed that to convict Gesch of AWIM, it must find that she "intended to kill the person he or she assaulted." Similarly, the court instructed the jury that to convict Gesch of assault with intent to do great bodily harm, it must find that she acted "with intent to do great bodily harm, less than the crime of murder." However, with respect to felonious assault, as in *Davis*, the jury was not instructed that it must find that Gesch acted *without* the intent to commit murder or to inflict great bodily harm. Therefore, applying the Supreme Court's analysis in *Davis*, because the jury never found, with respect to the felonious assault convictions, that Gesch acted without the intent to commit murder or to inflict great bodily harm, the verdicts are not mutually exclusive. Accordingly, Gesch is not entitled to relief with respect to this issue.

## D. GREAT WEIGHT OF THE EVIDENCE

Next, Gesch argues that the jury's verdicts are against the great weight of the evidence. Gesch did not preserve this issue by raising it in a motion for a new trial, so our review is for plain error affecting her substantial rights. See *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (quotation marks and citation omitted). Questions regarding credibility are not sufficient grounds for relief unless the "testimony contradicts indisputable physical facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (quotation marks and citation omitted).

Here, the prosecution presented evidence that Gesch plotted with Arand to kill Gilbert. The evidence included a series of incriminating text messages and other communications between Gesch and Arand discussing the plan. Those text messages reflect that Gesch repeatedly urged Arand to follow through with the plan and supplied him with Gilbert's address and photo.[3] Gesch

_____

[3] Given that the text messages were sent from a phone number associated with Gesch, it is reasonable to infer that she was the one who sent the messages. The fact that a contrary inference

-9-

does not claim that any of the evidence or testimony contradicts physics or is otherwise patently incredible. Nor does Gesch directly claim that any of the testimony was either so inherently implausible that it could not be believed, or that the testimony had been seriously impeached. To the extent that Gesch suggests that some of the testimony was inconsistent or was impeached to some degree, even when "testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id.* at 643 (quotation marks and citation omitted). Gesch does not directly argue that this is the case here. Rather, she merely presents a list of arguments and evidence that she maintains supports her defense and weakened the prosecutor's case. The same arguments were presented to the jury and it is the jury's province to decide credibility and determine what weight to give to testimony or evidence. *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999). Thus, we conclude that the jury verdicts are not against the great weight of the evidence.

### E. SENTENCE

The trial court sentenced Gesch to a minimum term of 25 years for her AWIM conviction, which represented a departure from the sentencing guidelines. Gesch argues that her sentence for AWIM is unreasonable and disproportionate to the seriousness of the circumstances surrounding the offense and the offender. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, this Court must review "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

When reviewing a departure sentence for reasonableness, this Court examines whether the trial court adequately explained "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525, 909 NW2d 458 (2017) (quotation marks and citation omitted). "[R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id.* (citations omitted). Further, a trial court must "justify the sentence imposed in order to facilitate appellate review," *Steanhouse* 500 Mich at 470 (quotation omitted), which "includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been," *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). A trial court abuses its discretion when it fails to "provide adequate reasons for the extent of the departure sentence imposed . . . ." *Steanhouse*, 500 Mich at 476.

---

could have been drawn by the jury does not render the verdict against the great weight of the evidence.

In the instant case, the trial court's rationale for exceeding the guidelines was its belief that Gesch was the mastermind who planned the shooting and manipulated Arand into committing the offense. This rationale pertains to Gesch's role in the commission of the offense. We note that offense variable (OV) 14 (offender's role) is intended to address an offender's role in the commission of an offense and permits a court to assess 10 points if an offender was a leader in a multiple-offender situation. MCL 777.44(1)(a). Despite the trial court's belief that Gesch was the leader in this multiple-offender offense, it did not score OV 14. If the trial court believed that the evidence factually supported a finding that Gesch was a leader in this offense, it should have scored OV 14 rather than rely on that factor as a basis for departure. Further, the trial court did not offer any explanation for why the sentence imposed was more proportionate to the offense and the offender than a different sentence would have been, or justify the extent of its departure from the guidelines range. The court's stated reasons, therefore, are insufficient to warrant the sentence imposed in this case, and remand for resentencing is required. See *Steanhouse*, 500 Mich at 476.

Gesch also argues that she is entitled to resentencing because the trial court erred by scoring the sentencing guidelines for her AWIM conviction when it assessed 25 points for OV 13. Because Gesch did not object to the scoring of OV 13 at sentencing, this issue is unpreserved and our review is for plain error. See *Carines*, 460 Mich at 763.

"For determining the appropriate points under [OV 13], all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). In this case, the trial court relied on Gesch's separate convictions of assault with intent to do great bodily harm and two counts of felonious assault as fact support for its finding that the offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person," MCL 777.43(1)(c), so it assessed 25 points.

In *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018), this Court held that "a single felonious act cannot constitute a pattern" under OV 13. That case involved a single crash in which the defendant struck another car with two individuals. *Id*. at 693-694. The *Carll* Court distinguished both *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013) (finding a pattern of criminal activity where the defendant committed three separate acts against each of the three victims—a store owner and two individual customers—during a single robbery), and *People v Harmon*, 248 Mich App 522, 524, 532; 640 NW2d 314 (2001) (affirming an assessment of 25 points for OV 13 where the defendant took four nude photographs of two minors on one day, but on two separate occasions). The *Carll* Court explained:

> The instant case presents a very different circumstance. Defendant's reckless driving constitutes a single act, and although there were multiple victims, nothing was presented to show that he committed separate acts against each individual victim in the course of the reckless driving. Accordingly, we conclude that the trial court improperly scored OV 13 at 25 points. It should have been scored at zero. [*Carll*, 322 Mich App at 705-706.]

Further, in *People v Carter*, 503 Mich 221, 226-227, 229; 931 NW2d 566 (2019), our Supreme Court held that it is improper to score each pull of a trigger as a separate assault under OV 12 (contemporaneous felonious criminal acts), at least where "the sentencing offense can be separated from other distinct "acts." Although that case involved the scoring of OV 12 instead of

-11-

OV 13, the same analysis is applicable. The "sentencing offence" of AWIM (or assault with intent to do great bodily harm) cannot be separated into "other distinct acts" where the crimes involved a single act of shooting at one car. There was no evidence that Arand shot at Gilbert and then redirected the gun to fire at Pratt. Nor was there any evidence that he shot at the car during an initial ambush, continued to pursue it, and shot at it again at a separate location. Rather, the evidence demonstrated that the offense involved a single act of continuously firing four gunshots at the car without any pause or interruption. As in *Carter*, the prosecutor relied on all four shots together as evidence of the intent to commit murder or inflict great bodily harm. The prosecutor did not, for example, argue that each shot was evidence of a separate assaultive offense. Accordingly, consistent with *Carll* and *Carter*, we hold that the trial court erred when it scored OV 13 at 25 points.

The scoring error affects Gesch's appropriate guidelines range. Gesch received 100 total offense variable points, which placed her in OV Level VI on the applicable sentencing grid. MCL 777.62. A 25-point reduction will lower her OV score to 75 points, which will place her in OV Level IV. The scoring adjustment reduces Gesch's guidelines range from 135 to 225 months to 108 to 180 months. A scoring error that affects the appropriate guidelines range generally requires resentencing. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

For the reasons stated above, we remand for resentencing. On remand, the trial court shall score OV 13 consistent with this opinion. Furthermore, if the trial court again believes that a departure from the appropriate guidelines range is warranted, it must justify that departure by explaining why the guidelines range, including any scoring of OV 14 if supported by the evidence, does not accurately reflect the seriousness of the offense and the offender, and also justify the extent of any departure from the guidelines.

III. DOCKET NO. 350056 (ARAND)

A. ADMISSION OF EVIDENCE

Arand argues that he was denied a fair trial because of the introduction of testimony or evidence that was not timely disclosed to the defense, and because of the introduction of prejudicial evidence. A trial court's decision whether to admit or exclude evidence is generally reviewed for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "We review for abuse of discretion a trial court's decision to permit the prosecutor to add or delete witnesses." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). "Because an abuse of discretion standard contemplates that there may be more than a single correct outcome, there is no abuse of discretion where the evidentiary question is a close one." *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009). An "[e]videntiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." *People v Benton,* 294 Mich App 191, 199; 817 NW2d 599 (2011), citing MCL 769.26.

1. PERMISSION TO CALL WITNESSES

Arand appears to argue that he is entitled to relief because the prosecutor failed to timely file a witness list before trial. Arand argues that this deficiency required dismissal. MCL

767.40a(3) provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." "MCL 767.40a(4) permits a prosecutor to endorse a witness 'at any time upon leave of the court and for good cause shown or by stipulation of the parties.'" *People v Herndon*, 246 Mich App 371, 403; 633 NW2d 376 (2001). A trial court has discretion in fashioning a remedy for a violation of MCL 767.40a. *Everett*, 318 Mich App at 519. "Mere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *People v Callon*, 256 Mich App 312, 328; 662 NW2d 501 (2003). Moreover, to establish that a trial court abused its discretion, the "defendant must demonstrate that the court's ruling resulted in prejudice." *Id*. (quotation marks and citation omitted).

Arand complains that the defense did not receive a copy of the prosecutor's last witness list, but he does not discuss that the prosecutor filed the list electronically through the court's TrueFiling system and that the trial court had received a copy of the witness list. Although it is unclear why Arand's lawyer did not discover the list or was not able to access it electronically, the trial court did not clearly err by finding that the prosecutor had made the list available to the defense through the TrueFiling system.

With respect to the trial court's decision to permit the testimony of late-endorsed witnesses, the court did not abuse its discretion by denying Arand's motion to strike the witnesses. Arand provides no basis for concluding that he was actually prejudiced by the trial court's decision. At the beginning of trial, the court noted that the defense had notice of the testimony of the witnesses who testified at the preliminary examination. The court's decision to permit these witnesses to testify at trial did not result in any unfair surprise. With respect to the other witnesses, the court ruled that the defense lawyer was to be provided with an opportunity to speak to the witnesses before they testified. Also, Arand does not dispute the trial court's observation that the witness were only custodial or foundation witnesses and he had already been provided with the underlying records, phone, photograph, and video evidence. Given that the prosecutor's negligence is not the type of misconduct that would justify exclusion of testimony, *Callon*, 256 Mich App at 328, and that Arand already had knowledge of or copies of the underlying records that would be the subject of the witnesses' testimony, the trial court did not abuse its discretion when it took the balanced approach of permitting the defense lawyer to interview these additional witnesses before they were called to testify.

## 2. CELL TOWER MAPS

Arand next argues that the trial court abused its discretion by permitting the prosecution to introduce cell tower maps, which had not been provided to the defense before trial. The trial court, at least initially,[4] allowed the prosecutor to present the composite cell tower maps, some of which

---

[4] Although the trial court later indicated that it would "suppress the maps" because one of the witnesses was not qualified as an expert, the maps had already been admitted and published to the jury. It is unclear from the record whether the court subsequently instructed the jury not to consider Exhibits 12C and 12D, or otherwise removed them from the materials the jury could consider. Therefore, we will treat these maps as having been admitted for purposes of reviewing this claim of error.

-13-

contained data about relevant locations because the court found that the maps would be useful as demonstrative evidence. Demonstrative evidence is admissible when it may aid the fact-finder in reaching a conclusion on a matter material to the case. *People v Castillo*, 230 Mich App 442, 444; 584 NW2d 606 (1998). "[D]emonstrative evidence . . . must satisfy traditional requirements for relevance and probative value in light of policy considerations for advancing the administration of justice." *Id.* " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The cell tower maps, Exhibits 12C and 12D, were relevant because they provided a visual summary of the phone location data that was the subject of witness testimony. They also contained summaries of other maps that were already admitted. The evidence was useful to assist the jury in understanding the witness testimony regarding the content of the cell phone records, cell tower locations, and other relevant locations.

Arand argues that the trial court should have not permitted admission of the maps because they were not provided to the defense until the middle of trial. However, Arand's argument that the exhibits introduced new evidence that was unknown to the defense is inapt. Arrant asserts that "[the court's] ruling was based on [its] incorrect determination that the exhibits, created through a computer program available to the police, could have been created by defense counsel because she received the disks containing the raw cell phone data from the defendants' cell phones in discovery." However, this was an accurate observation by the trial court. The defense was provided with the underlying data. Although a police detective testified that he had used the "ZetX" program made available to him from a federal law enforcement site, Arand has not provided support for any claim that his lawyer could not have used the same program to create mapping for the defense, nor has he shown that his lawyer could not have created similar mapping with another program or even by hand, as the police detective had done before he began to use the current program. In addition, the only prejudice Arand discusses is that "[s]uch evidence, had it been disclosed prior to trial, may have affected the defendant's decision to reject the prosecution's offer of settlement and proceed to trial." Because the defense already had the underlying data, as well as copies of the other maps, we reject Arand's claim of prejudice. To the extent that the court admitted the maps, it did not abuse its discretion.

### 3. DISCLOSURE OF ARAND'S PROBATIONARY STATUS

Arand also argues that he was entitled to a mistrial after the jury heard that Arand had a probation officer. While playing a recording of a conversation between Arand and a police detective, the prosecutor apparently failed to mute the sound on a portion of the recording where Arand mentioned lying to his probation officer. Arand moved for a mistrial, but the trial court denied the motion.

The jury was already aware that Arand was a convicted felon because of the felon-in-possession charge. The reference to Arand's probation status was isolated and inadvertent. See *People v Wallen*, 47 Mich App 612, 613; 209 NW2d 608 (1973) (stating that "[w]hile it is true that where a defendant does not take the stand in his own behalf, his prior convictions may not be introduced into evidence, an isolated or inadvertent reference to a defendant's prior criminal activities will not result in reversible prejudice."). Moreover, the trial court instructed the jury to disregard the remark, and the lawyers for both defendants stated that they were satisfied with the instruction. "Jurors are presumed to follow their instructions, and instructions are presumed to

cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Under these circumstances, Arand has not shown that the comment was so prejudicial as to require a mistrial or reversal of his convictions.

## 4.  CUMULATIVE ERROR

Arand correctly notes that "[t]he cumulative effect of a number of errors may amount to error requiring reversal." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002) (quotation marks and citation omitted).  However, "only actual errors may be aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995).  Arand has not shown that the trial court abused its discretion, or demonstrated resulting prejudice, with respect to any of the underlying claims of error.  Thus, he has not demonstrated that the cumulative effect of any underlying errors denied him a fair trial.

## B.  ARAND'S STANDARD 4 BRIEF

In a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Arand argues that his jury verdict form was constitutionally defective.  This issue is unpreserved because Arand did not object to the verdict form in the trial court.  Therefore, review is limited to plain error.  *Shenoskey*, 320 Mich App at 82.  Arand's verdict form was identical to the verdict form used for defendant Gesch.  As explained in Section II(A), *supra*, the form is distinguishable from the form that was deemed improper in *Wade*, 283 Mich App at 468.  The form appropriately provided the jury with the option of returning a general verdict of not guilty, and therefore, was not defective.  Accordingly, we reject this claim of error.  Likewise, Arand's lawyer was not ineffective for failing to object to the verdict form.  *Clark*, 274 Mich App at 257.

We affirm defendants' convictions in both cases, but in Docket No. 348866, we vacate Gesch's sentences and remand for resentencing consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

-15-